Joe J. JORDAN, James E. Mitchell
and Jordan, Mitchell, Inc.

v.

FOX, ROTHSCHILD, O'BRIEN
& FRANKEL.

Civ. A. No. 91–2600.

United States District Court,
E.D. Pennsylvania.

March 27, 1992.

**473**

Sharon K. Wallis, Philadelphia, Pa., for plaintiffs.

Steven R. Waxman, Leslie M. Gerstein, Lauren P. McKenna, Philadelphia, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

This case is related to *Jordan v. Berman*, 758 F.Supp. 269 (E.D.Pa.1991). The published opinion sets forth the facts which underlie this litigation and they will not be recounted at length herein. As in *Berman*, plaintiffs assert a claim under 42 U.S.C. § 1983, alleging that defendants deprived them of property without due process. Presently before the court is defendants' Motion to Dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### I. STANDARD OF LAW

In deciding defendants' motion to dismiss for failure to state a cognizable claim, the court must accept as true all of the plaintiff's factual allegations and draw from them all reasonably favorable inferences. *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). A case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with the plaintiff's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### II. FACTS

Viewed in the light most favorable to plaintiffs, the pertinent facts are as follow. Defendants are lawyers who were retained by the defendants in *Berman* to obtain and execute a confessed judgment pursuant to a cognovit clause in a lease when plaintiffs refused to pay a retroactive rent increase which they disputed.[1] In *Berman*, plain-

1. The original defendants were three members of the defendant law firm. By stipulation, the

tiffs have alleged that this was part of an effort by the defendants in that case to extort and defraud them.

In the course of that representation, Fox, Rothschild attorney Martha Chovanes, Esq. filed with the Prothonotary of the Court of Common Pleas of Philadelphia a Confession of Judgment Complaint on May 16, 1989. Along with that complaint, attorney Chovanes filed a praecipe for the Prothonotary to enter judgment and to issue a writ of execution to the Sheriff.

Paul J. Brenman, Esq. then entered his appearance for Jordan, Mitchell Inc. and confessed judgment on its behalf. The Prothonotary's office entered judgment and simultaneously issued the writ. Later that afternoon, the Sheriff served the writ on Fidelity Bank, and thereby attached the checking account of Jordan, Mitchell Inc. at that institution.

In so doing, defendants and the officials whose aid they enlisted acted pursuant to applicable state procedures. *See* Pa. R.Civ.P. 3103, 3111 and 2959.[2] Under these procedures, a judgment debtor is not notified or given an opportunity to be heard prior to the issuance of a writ or service on a garnishee. A debtor receives postseizure notice and has an opportunity to open the judgment upon presentation of a defense sufficient to withstand a directed verdict. *See Berman,* 758 F.Supp. at 278. These procedures do not require a prompt postseizure hearing on the validity of the creditor's claims, and execution may proceed even when a judgment has been opened. *Id.* at 280.

Plaintiffs did not receive notice of the attachment until May 19, 1989, and were deprived of the use of the Fidelity account until May 24, 1989. A number of checks written to satisfy their financial obligations bounced. On May 24, 1989, plaintiffs filed

a petition to open the confessed judgment and obtained an order allowing them to substitute a $10,000 escrow account for the garnished account. On June 5, 1989, with the consent of defendants, the escrow was released. On July 21, 1989, a state court granted plaintiffs' petition and opened the confessed judgment.

## III. DISCUSSION

### A. Standing of the Individual Plaintiffs

Defendants argue that the individual plaintiffs have failed to state a cause of action as the garnished account in question admittedly was that of the corporate plaintiff.

■ An action for injury to a corporation must be pursued in the name of the corporation. *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985). That an individual shareholder or employee may sustain harm incidental to the injury to the corporation does not confer standing upon him. *Id.* at 545 (loss of employment from fraud perpetrated against corporation insufficient); *Motley Associates, Inc. v. Rumbaugh,* 104 B.R. 683, 686 (E.D.Pa.1989). Initiating an action under 42 U.S.C. § 1983 does not alter the requirement that a plaintiff affiliated with a corporation sustain a *direct* individual injury to maintain standing. *Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir.1989).

Plaintiffs allege that "as a result of" the garnishment of plaintiff *corporation's* account, the individual plaintiffs sustained harm. Moreover, much of the harm the individual plaintiffs allegedly sustained consisted of effort and resources they were required to expend on behalf of the corporation as officers thereof.[3]

parties agreed to dismiss defendant Robreno and to substitute Fox, Rothschild for the individual defendants. The stipulation allows Fox, Rothschild to assert only those defenses which were available to the individual defendants. The court thus will address the motion with reference to the conduct of the individual defendants.

**2.** While the prothonotary also relied in part on Rule 2958, *Jordan v. Berman,* No. 89–8172, Def. Pettit's Br. at 7, 10, it is clear from the face of the Common Pleas court record that he also complied with Rule 236 which superseded it.

**3.** To the extent plaintiffs expended personal funds to vindicate the rights of the corporation, they may be entitled to reimbursement from the corporation. This would not, however, consti-

Individual plaintiffs have failed to set forth a distinct individual direct injury. Accordingly, defendants' motion to dismiss their claims on this ground is well founded.

## B. Joint Action of Public and Private Parties Under § 1983

■ A private individual's conduct may be attributable to the state if the individual "acted together with or has obtained significant aid from state officials." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). "When private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).

The Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756. In *Lugar*, the Court found joint participation sufficient to establish state action where a private individual invoked the aid of state-created procedures in the context of a prejudgment attachment. *Id.* at 942, 102 S.Ct. at 2756 (plaintiff sufficiently demonstrated state involvement "when the State had created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute").

■ Defendants argue that a private attorney in the course of representing a client cannot be considered a state actor by virtue of the attorney's capacity as an officer of the court. This is correct. A private attorney cannot be considered a state actor by virtue of being an officer of the court.

*See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Drum v. Nasuti*, 648 F.Supp. 888, 896 (E.D.Pa. 1986), *aff'd.*, 831 F.2d 286 (3d Cir.1987) (Table); *Arment v. Commonwealth National Bank*, 505 F.Supp. 911, 913 (E.D.Pa. 1981); *Raitport v. Provident National Bank*, 451 F.Supp. 522, 531 (E.D.Pa.1978). It has never been asserted, however, that the attorneys were named as defendants in this case because they acted as officers of the court. Rather, they are alleged to be state actors in this context because they invoked state attachment procedures.

Defendants' reliance on *Shipley v. First Federal Sav'gs. and Loan Ass'n*, 703 F.Supp. 1122 (D.Del.1988), *aff'd without op.*, 877 F.2d 57 (3d Cir.1989), *cert. denied*, 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 666 (1990), is misplaced. In *Shipley*, plaintiff sued a bank which held a mortgage on his property and the bank's attorney who had attempted several times to foreclose on the property pursuant to Delaware law.[4]

The attorney argued that he could not be considered a state actor by virtue of being an officer of the court. The court did not disagree but found the theory inapplicable to an attorney's invocation of foreclosure procedures. The Court stated:

> While this [principle] may be true, it does not answer the question in this case, namely, whether [the attorney] assumed the role of a state actor by using the procedures in the Prothonotary and the Sheriff's offices. [The attorney] utilized these procedures while acting outside of his courtroom role as a trial attorney.

*Id.* at 1127.[5]

■ The principle that a private attorney does not become a state actor by virtue of being an officer of the court is not applica-

---

tute a direct injury inflicted upon individual plaintiffs by the defendants.

4. The Delaware procedures provided that upon the filing of a complaint in Superior Court, a writ would issue from the Prothonotary and the writ, complaint and summons would be served by the Sheriff. The attorney in question had attempted to foreclose by filing a complaint.

5. *See also Buller v. Buechler*, 706 F.2d 844, 847 n. 3 (8th Cir.1983) (while attorney cannot be considered state actor merely because he is an officer of the court, "it does not resolve the issue of whether [the attorney's] participation in the garnishment of plaintiffs' property pursuant to S.D. Codified Law Ann. §§ 21–18–1 *et seq.* constituted conduct under color of state law for purposes of section 1983").

ble to an attorney who invokes a state attachment procedure to seize property on behalf of a client. An attorney in these circumstances may be liable under § 1983. *Buller*, 706 F.2d at 852. In such situations, the attorney acts in a capacity wholly distinct from any duty owed to the court.

Relying on *Shipley*, defendants alternatively propose that the joint action theory requires the existence of a conspiracy or an agreement between defendants and state officials to violate plaintiff's constitutional rights. Since plaintiffs do not allege that the defendant attorneys entered into a conspiracy or an agreement with state officials, defendants contend that the court must dismiss this case.

In *Shipley*, plaintiff had in fact alleged a conspiracy between an attorney and state officials to violate his constitutional rights. When he failed to adduce any evidence of such a conspiracy, the Court granted summary judgment in favor of the defendant attorney. In so doing, the Court did state that:

> The decisions in *Drum, Hauptmann [v. Wilentz*, 570 F.Supp. 351 (D.N.J.1983)], and *Chicarelli [v. Plymouth Garden Apartments*, 551 F.Supp. 532 (E.D.Pa. 1982)], which built on *Arment*'s reasoning, are the most recent voices in our circuit on the joint action theory of finding attorneys liable under section 1983. Under their analyses, [a private attorney's] actions cannot be labeled as state action unless there is evidence of a conspiracy or agreement between [the private attorney] and state officials to violate [a plaintiff's] federal constitutional rights.

*Id.*

From a close reading, it is not clear that the cases cited stand for the proposition that there *must* be a conspiracy between a state official and a private attorney before the latter can be liable under § 1983.

In *Arment v. Commonwealth National Bank*, 505 F.Supp. 911 (E.D.Pa.1981), the

defendant attorney *did conspire* to violate plaintiff's constitutional rights. The attorney and his client, a creditor of plaintiff, prevailed upon a district justice and a law enforcement officer to prosecute the plaintiff to coerce him into paying a debt to the creditor. The court did not hold, however, that a conspiracy is *required* before the conduct of a private attorney can be characterized as state action. Rather, the establishment of the conspiracy negated any further consideration of the issue.

In *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532 (E.D.Pa. 1982) plaintiffs, former tenants of an apartment complex, sued the complex's investors for initiating eviction proceedings with the assistance of an attorney who was not a party in the case. The court held that defendants were not state actors because it had not been shown that they were "clothed with the authority of state law" or that the eviction procedures utilized were themselves unconstitutional. *Id.* at 537–38.[6] The court then merely noted that plaintiffs also had failed to show state action in an alternative manner by alleging or demonstrating official involvement in a conspiracy or understanding to deprive plaintiffs of their Fourteenth Amendment rights. *Id.* at 539.

In *Hauptmann v. Wilentz*, 570 F.Supp. 351 (D.N.J.1983), *aff'd*, 770 F.2d 1070 (3d Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1987), plaintiff alleged a conspiracy between the New Jersey attorney general, a private corporation, the New Jersey state police and several private attorneys to deprive plaintiff's decedent of his privacy and right to counsel. The Court in *Hauptmann* recognized that a conspiracy between state officials and private parties could constitute state action. *Id.* at 381 ("A conspiracy involving private persons with state officials therefore may satisfy the color of state law as to those private persons."). Since a conspiracy had been alleged, the Court had no

**6.** Significantly, the Court noted: "[t]here is no question that were plaintiffs to show in this case that the Pennsylvania confession of judgment procedure is unconstitutional or that defen-

dants, in following a procedure or rule of conduct imposed by the state, violated a federal right of the plaintiffs a violation of section 1983 would be made out." *Id.* at 537.

occasion to consider the scope of the joint action theory in a case without such an allegation.[7] The Court did not hold that a private lawyer *must* conspire with a state official before he can be found to have acted under color of law.

In *Drum v. Nasuti*, 648 F.Supp. 888 (E.D.Pa.1986), plaintiff alleged that private attorneys conspired with federal prosecutors improperly to induce his guilty plea to criminal charges. Because plaintiff failed to adduce evidence of the conspiracy alleged, the Court granted summary judgment for defendants. *Id.* at 897.

These cases appear to stand for the propositions that a private attorney who conspires with a public official to violate an individual's constitutional rights may be a state actor, and that a plaintiff who alleges a cause of action for conspiracy must produce evidence of such a conspiracy to sustain his claim. It is not clear that they stand for the proposition that absent an allegation of conspiracy, an attorney who invokes the machinery of the state cannot be found to be a state actor.

In any event, in view of *Lugar*, the Court in *Shipley* recognized that an allegation of conspiracy is not required in the context of an attachment of property by a state official pursuant to an *ex parte* application of one party to a private dispute.[8]

■ *Lugar* does not require a § 1983 plaintiff to show that private individuals conspired or agreed with state officials to deprive him of a constitutional right. To the contrary, the Supreme Court in *Lugar* explicitly states:

The Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state created attachment procedures. That holding is contrary to the conclusions that we have reached as to

the applicability of due process standards to such procedures.

*Lugar*, 457 U.S. at 942, 102 S.Ct. at 2756.

Even assuming that *Lugar* is limited to cases involving attachments issued upon *ex parte* petitions, this is such a case. *See also Buller*, 706 F.2d at 849 (garnishment by attorney for client of proceeds of public auction held by plaintiff, pursuant to state procedures, is joint participation with state officials sufficient to characterize attorney as state actor).

Consistent with *Lugar*, private attorneys, acting on their client's behalf, who invoke the machinery of the state to effect an *ex parte* seizure of property can be found to be state actors under § 1983.

### C. Sufficiency of § 1983 Claim

To sustain a § 1983 claim, a plaintiff must show that he was deprived of a federally secured right by a defendant acting under color of state law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). Having determined that defendants may be found to have acted under color of state law, the court must consider whether plaintiffs adequately allege that defendants' actions deprived the corporate plaintiff of a constitutional right.

■ Although allegedly only temporarily denied use of its funds, plaintiff would have been deprived of property within the purview of the Fourteenth Amendment. *See Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991); *Berman*, 758 F.Supp. at 277 (citation omitted). The court in *Berman* did not hold that Pennsylvania's confession of judgment procedure itself is constitutionally deficient. Rather, the court found that Pennsylvania's procedures for executing on confessed judgments failed to comport with due process.

**7.** The focus of the Court was directed to whether or not plaintiff had alleged a conspiracy with sufficient particularity. *Id.* at 382. Finding plaintiff's complaint insufficient, the Court dismissed the claim against certain defendants. *Id.* at 382–85.

**8.** The Court in *Shipley* declined to extend *Lugar* to a scenario involving the adequacy of notice in a foreclosure proceeding under state court rules providing for constructive service.

The Pennsylvania procedures authorize writs of execution to be issued by a prothonotary and for the attachment of a debtor's property upon service of a writ by a sheriff on a garnishee upon *ex parte* application immediately following entry of a confessed judgment, without review or approval by an official invested with the requisite training or discretion and without ensuring an opportunity for a prompt hearing on the merits of the creditor's claim. *Berman*, 758 F.Supp. at 280. *See also Connecticut v. Doehr*, 111 S.Ct. at 2114.

Thus, any unconstitutional deprivation of corporate plaintiff's property occurred as a result of the attachment, not the entry of a confessed judgment. Plaintiffs' allegation that attorney Chovanes signed the praecipe for the writ of execution and directed the sheriff to serve immediately the garnishment on Fidelity Bank is sufficient to withstand a motion to dismiss for failure to state a cognizable § 1983 claim. The action allegedly undertaken by attorney Brenman was to enter an appearance on behalf of Jordan, Mitchell Inc. and confess judgment. That act alone was not unconstitutional. Taken in a light most favorable to plaintiff, however, one could infer that the two attorneys acted in tandem for the ultimate purpose of effecting a seizure of the corporate account. This is sufficient at this stage to preclude a dismissal of the claim against this defendant on that basis.

### D. Immunity Defense

Defendants argue that even if a cognizable § 1983 claim has otherwise been stated, the complaint must nevertheless be dismissed on the basis of a qualified immunity defense.

While expressly declining to decide the question, the Supreme Court suggested in *Lugar* that a qualified immunity might be available to a private party liable for utilizing constitutionally infirm albeit presumptively valid state procedures. *See Lugar*, 457 U.S. at 941 n. 23, 102 S.Ct. at 2756 n. 23.

On its face, § 1983 does not provide for immunity. Courts have implied an immunity defense, however, in circumstances where there was a tradition of immunity at common law and where there are compelling policy reasons for providing such immunity. *See Owen v. City of Independence*, 445 U.S. 622, 635, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673 (1980). This is premised, at least in part, on an assumption that when enacting § 1983 Congress would have contemplated the availability of those defenses available at common law for comparable or analogous tortious conduct.

One may reasonably question whether Congress in 1871 would have contemplated that a private party could be held liable at all under § 1983 for enlisting the aid of state officials in effecting an attachment of property, let alone what defenses might be available to such a person. It appears, however, that in determining the availability and scope of immunity, current policy considerations are more important than ancient common law principles. *See Anderson v. Creighton*, 483 U.S. 635, 644–45, 107 S.Ct. 3034, 3041–42, 97 L.Ed.2d 523 (1987) (noting that the Court had "completely reformulated qualified immunity [for public officials] along principles not at all embraced in the common law").

The Third Circuit has not addressed the issue of qualified immunity for private § 1983 defendants sued on a joint action theory. The seven circuit courts which have addressed the issue have reached diverse conclusions.[9]

The Ninth and Sixth Circuits have held that good faith or qualified immunity is not available to private § 1983 defendants. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318–19 (9th Cir.1989); *Duncan v. Peck*, 844 F.2d 1261, 1264 (6th Cir.1988); *Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir.1983). The Court in *Duncan* premised its holding on the absence of immunity for private parties at common law and the inapplicability to private parties of

---

**9.** It appears that the Supreme Court is prepared to address and hopefully provide future guidance on this issue. *See Wyatt v. Cole*, 928 F.2d 718 (5th Cir.), *reh'g. denied*, 934 F.2d 1263, *cert. granted*, — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991).

the policy considerations underlying qualified immunity for public officials.[10] These considerations include the diversion of officials from public duties, the inhibiting of official action and the deterrence of able people from public service occasioned by the risk of liability and the burdens of litigation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).

The First and Tenth Circuits have held that qualified immunity is available to a private § 1983 defendant who is sued for acts undertaken at the behest of the state to assist the state in performing an essentially governmental function. *Frazier v. Bailey*, 957 F.2d 920 (1st Cir.1992) (private parties performing under contract duties statutorily required of state); *Rodriques v. Furtado*, 950 F.2d 805, 815 (1st Cir.1991) (private physician performing body cavity search to assist police in execution of search warrant); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 722 (10th Cir.1988) (private security firm acting pursuant to contract with governmental agency). Conversely, the First Circuit has held that a private § 1983 defendant who voluntarily enlists the aid of the state for a self-interested purpose does not enjoy qualified immunity. *de Santana v. Velez*, 956 F.2d 16, 20 (1st Cir.1992). *See also Downs v. Sawtelle*, 574 F.2d 1, 15–16 (1st Cir.1978).

While unique policy reasons exist for immunizing defendants in these circumstances, this approach seems more suited to a pre-*Lugar* determination of when a private party is a state actor than whether a private party acting under color of law is entitled to immunity. The purpose or motive of a private party utilizing state procedures per se has little to do with whether he reasonably should have known that he was violating a clearly established constitu-

tional right. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The courts which recognize a qualified immunity for private § 1983 defendants, including the First Circuit in the limited context in which it has done so, have adopted the objective legal reasonableness test of *Harlow*.

The Eleventh, Eighth and Fifth Circuits have held that a private § 1983 defendant is entitled to the same qualified immunity as a public official in circumstances comparable to those in the instant case. *Jones v. Preuit & Mauldin*, 851 F.2d 1321, 1325 (11th Cir.1988) (en banc) (creditor effecting attachment under state statute of "highly questionable" constitutionality entitled to qualified immunity in § 1983 suit), *vacated on other grounds*, 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989); *Watertown Equipment Co. v. Norwest Bank Watertown*, 830 F.2d 1487, 1489–90 (8th Cir.1987) (private parties acting jointly with public officials to effect creditor remedies pursuant to state statutes enjoy qualified immunity), *cert. denied*, 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988); *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.1982) (private party utilizing presumptively valid state attachment statute entitled to qualified immunity under *Harlow* standard).

These Courts have implied the availability of immunity to similarly situated private § 1983 defendants from the so-called defense of probable cause available at common law in wrongful attachment cases,[11] and found it to be justified by the important public policy of allowing citizens to rely on existing legal mechanisms to vindicate rights or resolve disputes. *See Jones*, 851 F.2d at 1324–25; *Buller*, 706 F.2d at 851; *Folsom*, 681 F.2d at 1037–38.

The court agrees that this is an important public interest sufficient to support qualified immunity in the circumstances al-

---

**10.** Relying on the existence of a good faith or probable cause defense at common law to the torts of malicious prosecution and wrongful attachment, the Court in *Duncan* did recognize a good faith defense for a private § 1983 defendant who effected an attachment pursuant to a presumptively valid state statute. *Duncan*, 844 F.2d at 1267.

**11.** Actually, the burden of proving that an attachment proceeding was initiated without probable cause is on the plaintiff. *See* W. Prosser, *Handbook of the Law of Torts*, § 120 (4th Ed.1971). Thus, technically the courts have converted an element of a common law tort into an immunity defense.

leged in this case. The court believes that it would be anomalous and unfair to hold that a private citizen acts under color of law for purposes of imposing liability when he enlists the aid of public officials and then to deny him the qualified immunity afforded to those officials, effectively making the former *more* liable than the latter. *See Jones,* 851 F.2d at 1325; *Buller,* 706 F.2d at 851. Further, while not facing the prospect of liability, many public officials likely would still be diverted from their official duties in such joint action cases by the need to provide discovery and trial testimony in § 1983 suits involving private parties with whom they acted in concert.

Consistent with these public interests, the court believes that affording private § 1983 defendants qualified immunity is preferable to adopting a subjective good faith defense. Just as "a reasonably competent public official should know the law governing his conduct," *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738, so should attorneys and creditors be encouraged to keep abreast of the applicable law in their fields of endeavor. Today, a variety of private parties are expected to take reasonable steps to familiarize themselves with an array of health, safety, environmental, tax and other laws and regulations pertaining to the conduct of their affairs. A subjective standard too easily could encourage deliberate ignorance and produce dramatically different results in cases involving similarly situated parties. There are many clearly established constitutional rights the violation of which reasonably should not be tolerated even by one acting without malice and in subjective good faith.

Accordingly, the court concludes that in a suit for utilizing an existing state attachment process later found to be constitutionally deficient, a private § 1983 defendant may assert the same type of qualified immunity afforded to public officials under *Harlow.*

Although not raised by plaintiff, since immunity is generally characterized as an affirmative defense, there is some question as to whether it can be asserted in a motion to dismiss. *See Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736; *Folsom,* 681 F.2d at 1038; Fed.R.Civ.P. 8(c) and 12(b). Where, as here, a defendant contends that under the facts alleged in the complaint he is entitled to qualified immunity, there is no practical reason not to permit him to proceed by way of a motion to dismiss. *See Hidahl v. Gilpin County DSS,* 938 F.2d 1150, 1153 (10th Cir.1991). *See also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") What the applicable law is and whether it was "clearly established" at the time of the act complained of are questions of law for determination by the court. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.[12]

In determining whether a constitutional right is clearly established for purposes of qualified immunity, a court must determine whether the contours of the right at the time of the alleged violation were sufficiently clear in light of pre-existing law that a reasonable person in defendant's position would understand that his conduct violated that right. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. One acting under color of law is not required to predict the evolution of constitutional law, but is required to apply established legal principles to analogous factual situations. *People of Three Mile Island v. Nuclear Reg. Com'rs.,* 747 F.2d 139, 144 (3d Cir.1984). The purpose of qualified immunity is not to give state actors "one liability-free violation" of a constitutional right. *Id.* at 145.

Defendants' contention that prior to *Berman,* no court had questioned the constitutionality of confessed judgments is unavailing. As noted, the court in *Berman* did *not* hold that taking judgment by con-

---

12. The objective legal reasonableness test which the court adopts is distinct from the subjective good faith defense defendants in the companion case of *Jordan v. Berman* advanced in their motion for reconsideration which was premised on their "innocent" state of mind.

fession is unconstitutional. Indeed, the court held that in challenging the constitutionality of the Pennsylvania procedure for confessing judgment, plaintiffs had failed to state a cognizable claim. *Berman*, 758 F.Supp. at 278. Rather, the court held that Pennsylvania's post-confessed judgment garnishment procedure fails to comport with due process because it does not provide for review and approval by an appropriate official invested with discretion, and does not guarantee a prompt postseizure adjudication of the underlying claim. *Id.* at 280.

The court agrees with the Eighth Circuit that by 1982, and thus ipso facto by 1989, it was clearly established, particularly in view of *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975), that any statute which provided for prejudgment attachment of a debtor's bank account by a creditor without notice and an opportunity for a timely hearing, absent exceptional circumstances, violated the constitutional right not to be deprived or property without due process. *Watertown Equipment Co.*, 830 F.2d at 1490. *See also Jonnet v. Dollar Savings Bank of the City of New York*, 530 F.2d 1123, 1130 (3d Cir.1976). Today, virtually every state requires a hearing, proof of exigent circumstances or both before allowing an attachment of property. *Doehr*, 111 S.Ct. at 2116.

The procedure at issue in the instant case permits attachment of a bank account following entry of a confessed judgment. Over a decade ago, however, the Third Circuit en banc stated that the due process standards applicable in cases of prejudgment attachment "govern" and "control" in the context of a postjudgment seizure as well. *Finberg v. Sullivan*, 634 F.2d 50,

57–8 (3d Cir.1980) (en banc). By 1984, federal authorities had concluded that Pennsylvania's post-confessed judgment attachment and execution procedures did not adequately protect judgment debtors' due process rights. *See* FTC, Trade Regulation Rule: Credit Practices, 49 Fed.Reg. 7740, 7751 (1984).

The attachment in *Finberg* occurred after the entry of a default judgment on a claim for which defendant acknowledged her liability. She successfully contended, however, that because Pennsylvania garnishment procedures did not require a prompt postseizure hearing on her claim of exemption, they failed to provide due process. Thus, after *Finberg* one would assume that a similar garnishment executed pursuant to a confessed judgment the basis of which is contested at least would be constitutionally suspect.[13] For purposes of due process, it is difficult to conclude that a judgment debtor is entitled to a prompt hearing on a claim that some of his attached property is exempt but not on a claim that all of his property has been attached unjustifiably or even fraudulently, on the basis of an unsupportable or even spurious pleading.

The pertinent considerations in either context are whether the applicable attachment procedures minimize the risk of an inappropriate seizure and ensure an opportunity to be heard in opposition at a meaningful time. *See Di-Chem*, 419 U.S. at 607–08, 95 S.Ct. at 722–23; *Fuentes v. Shevin*, 407 U.S. 67, 97, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972) (holding Pennsylvania replevin statute unconstitutional); *Finberg*, 634 F.2d at 58–59; *Jonnet*, 530 F.2d at 1129–30 (holding Pennsylvania foreign attachment procedures unconstitutional).

---

13. Default and confessed judgments have some important similarities. A default judgment is entered when a defendant ignores notice of a claim and an opportunity to be heard. A confessed judgment is entered when the defendant appears to have waived a right to notice and a hearing. Thus, both are entered against a person who has not had his proverbial "day in court." Both are subject to being open and set aside upon the requisite showing which in the case of each is markedly less than would be

required to vitiate a post-trial judgment. The Supreme Court has at least suggested that absent an opportunity for a debtor to vacate a confessed judgment upon a showing of a valid defense to the underlying claim, a procedure for judgment by confession would not withstand constitutional scrutiny. *See D.H. Overmyer Co., Inc. of Ohio v. Frick Company*, 405 U.S. 174, 188, 92 S.Ct. 775, 783, 31 L.Ed.2d 124 (1972) (execution of cognovit clause did not render debtor "defenseless").

If the Court in *Finberg* was only making a narrow point about social security recipients with income potentially exempt from attachment, it need not have discussed and relied upon four Supreme Court prejudgment seizure cases involving quite different circumstances, including *Di–Chem* in which the attachment of a corporate bank account was invalidated. The Court need not have stated that the case "presents the same interests that the Supreme Court sought to accommodate in the four prejudgment seizure cases" or that those cases "control the due process issue before us." *Finberg,* 634 F.2d at 58–59. The Court likely would not have referred to "any of a number of defenses" including "a claim of exemption" available to a judgment debtor seeking to resist execution of a judgment. *Id.* at 58. Rather, it appears that the Court in *Finberg* was applying and logically extending established due process principles to the particular facts before it. This is what the court did in *Berman.*

That a procedure may be constitutionally suspect or even of "highly questionable" constitutionality, however, does not mean that a reasonable person could not believe it to be constitutional. *See Jones,* 851 F.2d at 1328. The development and application of due process standards in the property attachment context have been evolving. When governmental authorities continue to utilize a procedure, even one in "legal jeopardy," generally "it is not unreasonable for private actors to fail to quickly comprehend a developing body of doctrine that portends trouble for its constitutionality." *Wyatt,* 928 F.2d at 722.

The court concludes that in May of 1989 a creditor or creditor's attorney reasonably could have believed that the post-confessed judgment attachment procedure invoked in this case, while criticized and in some legal jeopardy, was not clearly constitutionally deficient.[14] Accordingly, defendants are entitled to qualified immunity from liability on plaintiffs' claim. An appropriate order will be entered.

14. While defendants are attorneys, the relevant distinction for purposes of qualified immunity is between those acting in a private capacity and officials acting for the state. *Wyatt,* 928 F.2d at 722 n. 5.

## ORDER

AND NOW, this 27th day of March, 1992, upon consideration of defendant's Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and plaintiffs' response thereto, consistent with the accompanying memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED and the above-captioned case is DISMISSED.