# Dunn et ux. *v.* Mellon et al., Appellants.

[Marked to be reported.]

*Municipalities—Personal liability of officers or citizens.*

While a city, exercising an authority conferred by a statute afterwards adjudged unconstitutional, will be bound to compensate a person injured by such exercise, yet a municipal officer representing the city therein, and acting in obedience to an order regularly given to him in accordance with such statute, incurs no personal responsibility.

*Liability for act under unconstitutional statute.*

The same rule applies to a citizen who acts as the mere representative of a municipal officer, in the performance of a duty which apparently and by color of law rests upon him as a citizen, and which would necessarily be performed by the officer without personal liability, if the citizen refused to obey the law and the officer's mandate.

*Landlord not liable to tenant for act under unconstitutional statute.*

Proceeding according to the provisions of a statute, a city laid out a street, and gave a peremptory notice to the owner of a building, part of

which was within the lines of the street, that he must remove it, or the city would do so at his expense. The building was occupied by a tenant, who remained in it with knowledge of the laying out of the street. By cutting away from the building, in obedience to the order of the city, so much of it as encroached upon the street, the owner did not render himself liable in damages to the tenant for interference with the latter's possession of the premises, although the statute under which the city acted was afterwards adjudged unconstitutional.

Argued Nov. 4, 1891. Appeal, No. 279, Oct. T., 1891, by defendants from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1890, No. 632, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Trespass by Michael J. Dunn and Margaret Dunn, his wife, against James R. Mellon and Thomas A. Mellon, partners doing business as Mellon Brothers, and others their employees, to recover damages for the eviction of the plaintiffs from a dwelling-house owned by Mellon Brothers and by them leased to said Margaret Dunn. Issue.

At the trial on May 7, 1891, the following facts were shown :

On June 24, 1889, an ordinance of the city of Pittsburgh directing the opening of Kirkwood street, was enacted under and in pursuance of the Act of May 16, 1889, P. L. 228. The southern line of the location upon which the street was laid out passed through the house occupied by the plaintiffs, and the opening of the street would involve the cutting away of about nine feet thereof. Proceedings for the assessment of damages were had before the board of viewers appointed under said act. The plaintiffs testified that they never received personal notice of these proceedings. The report of the viewers set out that they had given to lot owners the notices required by the statute, but the plaintiffs' names were not mentioned in the report. In October or November, 1889, notice was given by the proper officers of the city to Mellon Brothers that they must move the house off the street. It was admitted that the plaintiffs knew, at least as early as November, that the city was likely to require the moving of the building, and had one or more interviews with James R. Mellon on that subject. Testimony for the defendants tended to show that, in consideration of a reduction of the rent from twenty-two dollars to

fifteen dollars per month, the plaintiffs agreed to take the risk of any loss, in consequence of being compelled to vacate when the city would require compliance with its notice. This was denied by the plaintiffs, and testimony on their behalf tended to show that Mellon had promised the plaintiffs that they should not be disturbed during the continuance of their lease.

In January, 1890, the commissioner of highways received a peremptory order from the department of public works, to go upon Kirkwood street and take down any buildings that were standing upon it. The commissioners, thereupon, gave Mellon Brothers peremptory notice to move their house. Mellon Brothers, having informed the plaintiffs of this notice, employed their codefendants to cut away nine feet of the length of the building, and this was done. After the work was begun, the plaintiffs moved out of the house. The testimony was conflicting as to whether the work of cutting the house was objected to by them before its commencement, and as to whether their removal from the house was voluntary.

At the close of the testimony, the court, SLAGLE, J., submitted to the jury the disputed questions of fact, and charged in answer to points in part as follows:

The court is requested by plaintiffs to charge the jury:

1. That the defendants, Mellon Brothers, were not bound to obey any notice from the city authorities, to remove their house from off the limits of the. proposed street; and the fact that they acted in pursuance of such a notice, would not justify the trespass complained of in this action.

Answer: This is affirmed. Since the beginning of this suit and within a very short period, the act of assembly under which the opening of this street was made, has been declared to be unconstitutional; therefore, the city would have had no right to remove these parties, and Mellon Brothers could have no greater rights than the city had. They were merely acting in this matter under the authority of the city, and limited by that authority. [1]

2. There is no sufficient proof of notice from the city, in this case, to Mellon Brothers, to remove their house, that would be any defence to the present action.

Answer: This is also affirmed. The notice was given in the regular way; but, there being no authority for the proceedings, the notice of course would be void. [2]

3. The act of assembly and the city ordinance, and the proceedings of the viewers thereunder, in evidence, confer no authority on defendants to do the acts complained of.

Answer: This is also affirmed. It is the same proposition. [3]

4. No legal authority has been shown that would justify defendants in entering upon plaintiffs' premises and doing the acts complained of.

Answer: This is affirmed. It is also the same proposition. [4]

5. If the jury believe that plaintiffs received no notice of the opening of Kirkwood street, and had no opportunity to appear before the board of viewers, any entry made upon, or work done on her premises by defendants was a trespass.

Answer: Affirmed. [5]

The court is requested by defendants to charge the jury:

1. Under all the evidence, the verdict must be for defendants.

Answer: Refused. [6]

6. If the plaintiffs have any cause of action arising out of the acts complained of in this suit, said action must be against the city of Pittsburgh, and not against the defendants.

Answer: Refused. [9]

8. It being undisputed that the city of Pittsburgh, in the exercise of its right of eminent domain, laid out Kirkwood street through the premises occupied by Mrs. Dunn, and by ordinance of councils directed the opening thereof, and by its proper officers ordered the removal of the house of defendants occupied by plaintiffs, defendants were bound to obey said order of the city, and cannot be held to the payment of damages to plaintiffs, resulting from a lawful compliance with said order.

Answer: Refused. [8]

Verdict and judgment for plaintiffs for $240. Defendants appealed.

*Errors assigned* were [1–6, 8, 9] answers to plaintiff's and defendant's points.

*J. McF. Carpenter*, for the appellants.—It is clear beyond controversy that, had the case been tried before the Act of May 16,

1889, P. L. 228, was declared unconstitutional by this court in Pittsburgh's Petition, 138 Pa. 401, our first point must have been affirmed. Mellon Brothers simply obeyed a formal and absolute order to remove their building off the street, and they were bound to do this, or run the risk of heavy loss occasioned by the city's taking its removal in hand. The lower courts had already declared the Act of 1889 constitutional, and would not have entertained a bill to restrain the city from acting.

What could the defendants do but obey? The claim of the plaintiffs that they were not notified of the proceeding is absurd. Admittedly, they had knowledge of it in October, 1889; and moreover, the report of the viewers showing that all the requisite notices had been given, cannot be impeached collaterally. The mandatory order given by the city is a complete protection to the defendants, and it cannot be questioned collaterally on the ground that the proceedings on which it was based were irregular, or were taken under an unconstitutional statute: Gunn v. Tackett, 67 Ga. 725; Cole v. Black River Falls, 57 Wis. 110; Chicago Ry. Co. v. Langlade Co., 56 Wis. 614; People v. Orleans Co. Court, 28 Hun 14; Campbell v. Commonwealth, 96 Pa. 344; Clark v. Commonwealth, 29 Pa. 129.

The city of Pittsburgh had authority to lay out streets, independent of the Act of 1889, which merely introduced some new regulations on the subject: Act of April 6, 1867, P. L. 854. Buildings may remain on streets under certain circumstances: Act of May 13, 1871, P. L. 842; but, after Kirkwood street became a public highway, a failure by defendants to remove their building would have been indictable as a nuisance: Kelly v. Commonwealth, 11 S. & R. 345; Commonwealth v. McNaugher, 131 Pa. 61. The city has authority summarily to abate nuisances, and this authority cannot be questioned in a suit between third persons. And the plaintiffs have now a complete remedy against the city, under the Act of May 16, 1891, P. L. 65.

*F. C. McGirr, W. D. Moore* with him, for the appellees.— Counsel for appellants claim that, under the general powers of the city to open and lay out streets, they would be justified in what they did, but the record put in evidence shows on its

face that the proceedings to open the street were under the Act of May 16, 1889, P. L. 228, declared unconstitutional in Pittsburgh's Petition, 138 Pa. 401. When a statute is adjudged unconstitutional, it is as if it never had been. Rights cannot be built up under it; it constitutes a protection to no one who has acted under it, and no one can be punished for disobeying it prior to the decision: Cooley on Const. Lim., 6th ed., 222; *Ex parte* Siebold, 100 U. S. 371. Trespass lies for a taking of property under it: Stetson v. Kempton, 13 Mass. 272; Williams v. Brace, 5 Conn. 190; Sumner v. Beeler, 50 Ind. 341, (19 Am. Rep. 718.)

The city undertook to open a street through the house occupied by the plaintiffs, without giving them any notice of the proceeding. The plaintiffs testified that they were never notified, and the record of the proceedings does not mention their names. A tenant is " an owner or party interested," within the meaning of the statutes relating to entries under the right of eminent domain; and, even if the Act of 1889 had been constitutional, the city would not have been justified in entering on the premises, without having taken the necessary preliminary steps as to notice to the plaintiffs, etc.: Penna R. Co. v. Eby, 107 Pa. 166; Bethlehem Gas Co. v. Yoder, 112 Pa. 136; Lewis on Em. Dom. 369.

OPINION BY MR. JUSTICE GREEN, January 4, 1892.

It was clearly proved on the trial, by direct and entirely uncontradicted evidence, that the act of the defendants in removing a portion of the house in question, was done in obedience to a positive, mandatory order of the commissioner of highways of the city of Pittsburgh. That order was given in conformity with the law as it then was. An ordinance for the opening of Kirkwood street, from Highland Avenue to Collins Avenue, had been regularly ordained and enacted by the city councils. Viewers to assess damages and benefits had been regularly appointed, and had met and performed their duties, and made due report thereof according to law. After all this was done, the opening of the street was proceeded with until all obstructions were removed except the building in question. Preliminary notices had been given for the removal of the building, or a part of it, but the final and peremptory notice was not given

until early in January, 1890. The matter of the opening and the probable removal of at least a part of the building had been known and talked of for several months before, and the plaintiffs had been in communication with the defendant Mellon in regard to it as early as October or November preceding. When the final order came in January for the removal of the building, it was an order which emanated from the proper officer, and it either had to be obeyed, or the city authorities would execute it at the expense of the owner. If he had refused to obey it and the proper officer of the city had removed the building, undoubtedly the city would be liable for the consequences to any person injured, if the law under which the act was done was a void law. But it is just as undoubted that the officer who obeyed his orders in removing the building would not have been liable for his acts of obedience to his orders.

In the case of Pittsburgh's Petition, 138 Pa. 401, we decided not only that certain portions of the acts of 1887 and 1889, relating to streets and sewers in cities of the second class, were unconstitutional and void, but also that the city must pay for all work done under the proceedings, and for all damages inflicted upon property owners thereby. All the proceedings of the city for the opening of streets and assessment of damages and benefits, under the acts of 1887 and 1889, had at least color of authority under the language of those acts. If the real legal authority did not exist, because those acts were unconstitutional, the city would be responsible for the damages sustained by their proceedings. But it does not at all follow that the officers or agents who executed the authority of the city, in the premises, would be subject to any such responsibility.

The commissioner of highways was the proper officer, both *de facto* and *de jure*, for the execution of the orders of the city for the opening of streets, and could proceed with such execution without subjecting himself to a personal liability for his acts as such. He could not question the validity of his orders, and it was his duty to obey them. In the case of Clark v. Commonwealth, 29 Pa. 129, we held that even the acts of a president judge, whose right to his office was questioned, could not be impugned in any collateral proceeding. We said:

"He is a judge *de facto*, and as against all parties but the commonwealth he is a judge *de jure* also." In the case of Campbell v. Commonwealth, 96 Pa. 344, we enforced the same doctrine, saying, in relation to the challenged title of two associate judges: "Under due form of law, they hold their offices by title regular on its face. They are performing the duties thereby imposed on them, and enjoying the profits and emoluments thereof. Thus they are judges *de facto*, and as against all parties but the commonwealth they are judges *de jure*. Having at least a colorable title to these offices, their right thereto cannot be questioned in any other form than by quo warranto at the suit of the commonwealth." In both of the foregoing cases, we refused to permit the validity of the acts done by the judges to be called in question in any collateral proceeding.

It is no doubt true that unconstitutional laws cannot confer either contract rights, or property rights, upon any persons, natural or artificial, and the validity of such laws may be directly questioned by any persons adversely interested. But that doctrine is not in conflict with the question which arises in this case. Here, the question is as to the immunity from personal liability of a citizen who acts as the mere representative of a municipal officer, in the performance of a duty which, apparently and by color of law, rested upon him as a citizen, and which would necessarily be performed by the municipal officer without any personal liability, if the citizen refused to obey the law and the mandate of the officer. If, in such circumstances, the municipal officer would be exempt from individual liability for executing the orders of the city, we know of no reason why the citizen should be subject to such liability, he being a person interested, and apparently subject to the duty of obeying the mandatory order of the authorities. No hardship results to the persons injured, as they have their recourse to the city, and it would be a severe hardship to hold the citizen liable for merely obeying the law as it is written.

Judgment reversed.　　　　　　　C.