Clarence **MANIS**

v.

**CORRECTIONS CORPORATION OF AMERICA, et al.**

No. 1–92–0111.

United States District Court, M.D. Tennessee, Columbia Division.

Aug. 1, 1994.

Susan Laurie Kay, Nashville, TN, for plaintiff.

Kimberly Jennings Dean, Office of the Atty. Gen., Civ. Rights Claims Div., Nashville, TN, Stanley Tom Anderson, and Sandra I. Schefcik, Butler, Anderson & Rheney, Lexington, TN, for defendants Corrections Corp. of America, Warden Joe Driskell and South Cent. Correctional Center.

Kimberly Jennings Dean, Office of the Atty. Gen., Civ. Rights Claims Div., Nashville, TN and Michael M. Castellarin, Moody, Whitfield and Castellarin, Nashville, TN, for defendant Donald Fowler.

## MEMORANDUM

HIGGINS, District Judge.

The question has arisen whether a private corporation and its employees operating a prison under a contract with the State of Tennessee are protected from suit by the qualified immunity of public officials. For the reasons set forth below, the Court concludes that they are not.[1]

### I.

The facts of this case are set forth in detail in the Report and Recommendation (Docket Entry No. 48) of the Magistrate Judge. In brief, they are as follows.

The plaintiff is a state inmate in the custody of the Tennessee Department of Correction. He is incarcerated at a prison operated by Corrections Corporation of America (CCA). CCA is a private corporation that operates some of Tennessee's prisons pursuant to a contract with the State.

The plaintiff has sued CCA and one of its employees under 42 U.S.C. § 1983.[2] He alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The defendants moved to dismiss the action on the grounds that they are protected by the qualified immunity of public officials.

The Magistrate Judge concluded that certain questions of fact precluded dismissal of the action, but he recommended that qualified immunity should be applied to the defendants. In his opinion, "[c]reating an arbitrary distinction between prison officials who are government officials and prison officials who are private parties, despite the fact that they both perform the same functions, places form over substance and runs counter to the rationales behind qualified immunity." Report and Recommendation at 8. The Court disagrees.

---

1. The defendants raised this issue by moving to dismiss the action on the basis of qualified immunity. *See* Defendants' motion (filed February 22, 1994; Docket Entry No. 35) to dismiss. The Magistrate Judge recommended that the qualified immunity defense was applicable to the defendants. *See* Report and Recommendation (entered April 5, 1994; Docket Entry No. 48). The Court, however, rejected this aspect of the Report and Recommendation, stating that it would set forth its reasons in a forthcoming memorandum. *See* Order (entered June 6, 1994; Docket Entry No. 60).

2. By an amended complaint (filed March 8, 1994; Docket Entry No. 43) the plaintiff has added a private physician as a third defendant. The physician has not joined in the instant motion to dismiss. Thus, for present purposes, the Court uses the phrase "the defendants" to refer to CCA and its employee but not the physician.

**304**

## II.

Title 42 U.S.C. § 1983 "creates a species of tort liability that on its face admits of no immunities." *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 136 (1976). However, the Supreme Court has "accorded certain government officials either absolute or qualified immunity from suit if the 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that "Congress would have specifically so provided had it wished to abolish the doctrine." ' " *Wyatt v. Cole,* 504 U.S. ——, ——, 112 S.Ct. 1827, 1831, 118 L.Ed.2d 504, 512 (1992) (quoting *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980); *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)).

■ Thus, immunity from suit under Section 1983 today depends on whether such an immunity was recognized at common law when the statute was enacted and whether public policy would support such an immunity.[3] The United States Court of Appeals for the Sixth Circuit has reduced this analysis to a concise two-part test: "The first part requires the party claiming immunity to show that the immunity was recognized at common law. The second part requires a showing of strong public policy reasons for granting such an immunity." *Duncan v. Peck,* 844 F.2d 1261, 1264 (6th Cir.1988). Indeed, in a somewhat different context, the Court of Appeals already has applied this analysis to the question presented here and concluded "[b]ecause we find no evidence that private parties were immune from suit at common law, and because the various rationales for good faith immunity are inapplicable to private parties, we hold that private parties are not eligible for immunity from suit." *Id.* (holding that private individual who seized property pursuant to unconstitutional state attachment statute was not protected by qualified immunity); *see also Wyatt v. Cole, supra,* (holding the same).

*A. The Common Law.*

There is no mistaking that the Supreme Court has taken an historical approach to determining the availability of immunity from suit under Section 1983. As noted above, the statute on its face does not provide for any immunities at all. However, the Court has recognized their existence, not by "judicial fiat," but "upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler v. Pachtman,* 424 U.S. at 421, 96 S.Ct. at 990, 47 L.Ed.2d at 138. Assuming that the 42nd Congress was familiar with the immunities of public officials at common law, the Court has inferred from Congress' silence that it intended to preserve those immunities where they would not defeat the statute's purpose. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–59, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616, 626–27 (1981); *Wyatt v. Cole,* 504 U.S. at ——, 112 S.Ct. at 1831, 118 L.Ed.2d at 512. The Court has never recognized any immunity under Section 1983 except where there was an historical antecedent at the time the statute was enacted. *See Malley v. Briggs,* 475 U.S. 335, 342, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 279 (1986) ("We reemphasize that our role is to interpret the intent of Congress in enacting § 1983, not to make a free-wheeling policy choice, and that we are guided by the common-law tradition.").

The Sixth Circuit has examined the common law origins of the immunity of public officials and determined that it never extended to private citizens:

> The common law doctrine of immunity from suit originated from the concept that because "the King can do no wrong," it would be a contradiction of his sovereignty to allow him to be sued as of right in his own courts. W. Prosser and W. Keeton, *The Law of Torts,* § 131 (5th ed. 1984). Gradually, this concept was broadened to cover other government officials. *Scheuer v. Rhodes,* 416 U.S. 232, 239, 94 S.Ct. 1683 [1687–88], 40 L.Ed.2d 90 (1974). Yet, we find no evidence that the common law ever

**3.** Section 1983 originally was enacted by the 42nd Congress as Section 1 of the Civil Rights Act of 1871, 17 Stat. 13.

extended the immunity to include private citizens.

*Duncan v. Peck,* 844 F.2d at 1264. This finding by the Court of Appeals—that the common law never extended immunity to private citizens—is fatal to the defendants' assertion of immunity in this case. As noted above, the only basis for immunity under Section 1983 is the assumption that the 42nd Congress was cognizant of the common law immunities of its day and intended to preserve them in Section 1983. There is, thus, no basis for concluding that private parties, such as these defendants, who would not have been entitled to immunity at common law, should be afforded immunity under Section 1983 today.

### B. *Public Policy.*

■ Notwithstanding the lack of any historical basis for extending immunity to private citizens, the Magistrate Judge proceeded directly to the question of whether public policy favored the defendants being protected by qualified immunity in this case. Because the Court disagrees with the Magistrate Judge's conclusion on this point, it shall elaborate on the implicit danger of affording qualified immunity to private parties.

"Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt,* 504 U.S. at ——, 112 S.Ct. at 1833, 118 L.Ed.2d at 514. Such a balance is necessary because of the conflict created by holding government officials personally liable for actions taken "under color of law." On the one hand, personal liability has the salutary effect of making public officials obey the law or compensate their victims when they do not. On the other hand, it has the perverse effect of inhibiting public officials in the proper performance of their duties, or even deterring talented candidates from entering public service altogether, out of fear of incurring monetary liability or harassing lawsuits. *Forrester v. White,* 484 U.S. 219, 223, 108 S.Ct. 538, 542, 98 L.Ed.2d 555, 562–63 (1988); *Wyatt,* 504 U.S. at ——, 112 S.Ct. at 1833, 118 L.Ed.2d at 514–15. Thus, the Supreme Court has "accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987). This qualified immunity protects earnest public officials who risk running afoul of the law in a genuine effort to serve the public. "In short, the qualified immunity ... acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt,* 504 U.S. at ——, 112 S.Ct. at 1833, 118 L.Ed.2d at 515.

A private party that performs a government function for a fee, however, is not faced with the conflict of public officials, for it is not principally interested in the good of the public at large. "[A] private party is governed only by self-interest and is not invested with the responsibility of executing the duties of a public official in the public interest." *Duncan,* 844 F.2d at 1264; *see also Wyatt,* 504 U.S. at ——, 112 S.Ct. at 1833, 118 L.Ed.2d at 515 (private parties are not "principally concerned with enhancing the public good"). In the case of a private for-profit corporation hired to perform a public function, there is an increased risk that the corporation's actions will diverge from the public interest. Unlike public officials, corporate officers and employees are hired to serve the interests of the corporation, and, more specifically, its stockholders, whose principal interest is earning a financial return on their investment. Indeed, corporate officers owe a fiduciary duty to advance stockholders' interests, but they owe no such fiduciary duty to the public at large. Thus, unlike public officials, corporate employees always are compelled to make decisions that will benefit their shareholders, without any direct consideration for the best interest of the public.

Especially when a private corporation is hired to operate a prison, there is an obvious temptation to skimp on civil rights whenever it would help to maximize shareholders' profits. Affording the shield of qualified immunity to a private corporation and its employees

**306**

in these circumstances would directly contradict the policy behind qualified immunity: instead of promoting the public good by freeing public officials "to make decisions that are ... above all ... informed by considerations other than the personal interests of the decisionmaker," *Forrester*, 484 U.S. at 223, 108 S.Ct. at 542, 98 L.Ed.2d at 562, it would simply free a private corporation to maximize its profits, even at the cost of citizens' rights. In such circumstances, the threat of incurring money damages might provide the *only* incentive for a private corporation and its employees to respect the Constitution. Therefore, the best policy is not to afford them any immunity from suit.

CCA is a purely private corporation, and its employees are private individuals who have contracted to do the corporation's business. There is no compelling reason why these private parties should not have to come to court, like any other private party, to defend themselves when another citizen claims that they violated his legal rights. *See Wyatt*, 504 U.S. at ——— ———, 112 S.Ct. at 1833–34, 118 L.Ed.2d at 515 ("[U]nlike with government officials ..., the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes.").

### III.

Because there is no precedent at common law for extending qualified immunity to private parties and because public policy disfavors such an extension, the Court concludes that the defendants in this case are not protected by qualified immunity.[4]

---

4. The Court is aware of only one other decision addressing the question of whether a corporation and its employees operating a prison under contract with a state are protected by the qualified immunity of public officials. In *Tinnen v. Corrections Corporation of America*, 91–2188–TUA, 1993 WL 738121 (W.D.Tenn. Sept. 21, 1993) (unpublished opinion), on facts almost identical to those here, Judge Turner concluded that they were. His analysis was similar to that of the Magistrate Judge, reasoning that the similar "function" of public officials and private parties operating a prison justified extending qualified immunity to the latter. *Id.* at 6.

Of course, this Court is not bound by decisions from the Western District of Tennessee. For the reasons stated, the Court respectfully disagrees with Judge Turner's opinion.