Joseph V. CITRANO and
Kevin R. Chapman

v.

ALLEN CORRECTIONAL CENTER.

No. CV 94–1076.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 14, 1995.

Joseph V. Citrano, pro se.

Kevin R. Chapman, pro se.

Barbara D. Gibson, Lundy & Davis, Lake Charles, LA, for defendants.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court is a civil rights complaint filed *in forma pauperis* by *pro se* petitioners Joseph V. Citrano and Kevin R. Chapman. The petition is based upon 42 U.S.C. § 1983 and was filed in the United States District Court, Western District of Louisiana. The plaintiffs are currently confined at Allen Correctional Center in Kinder, Louisiana.

The plaintiffs allege that on or about March 29, 1994, plaintiffs were taken from their dormitory quarters and assaulted by the defendants, Sgt. Whittington, Sgt. Stenson, and Sgt. Jacobs. Plaintiffs allege that this physical assault was without lawful cause and in derogation of the plaintiffs' civil rights. Said assault resulted in significant and permanent personal injuries. The plaintiffs further allege that after the alleged assault, the defendant, Captain Bellon, hindered, prevented, discouraged and prohibited the plaintiffs from receiving adequate medical for their injuries. It is alleged that this action by Capt. Bellon constitutes deliberate indifference to the medical needs of the plaintiffs, which is actionable pursuant to 42 U.S.C.A. § 1983.

It is further alleged that the remaining defendants, Sgt. Jowel, Sgt. Austin, Warden Terry Terrell, Deputy Warden Andrews and Deputy Warden Crutcher, acting individually and in concert with each other, then prevented discouraged, hindered and prohibited the plaintiffs from seeking legal redress for their injuries and engaged in a concerted and individual effort to cover up, hide, negate, and otherwise avoid disclosure of the alleged incident. Warden Andrews allegedly received a telephone call from Lucille Gwenn, Chapman's grandmother, concerning his injuries, but was advised that he was jumped by other inmates.

The defendants filed a Motion to Dismiss pursuant to Rule 12(b) F.R.Civ.P. stating that:

1) The Eleventh Amendment to the United States Constitution bars official capacity suits against state officials;

2) The defendants are entitled to qualified immunity;

3) The plaintiffs failed to state a cause of action upon which relief can be granted.

The defendants move for dismissal pursuant to Rule 12(b)(6), failure to state a claim upon which relief can be granted. Rule 12(b) states that "[I]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The movers did not introduce matters outside the pleadings in this case, therefore the court will consider this a Rule 12(b) motion.

On a F.R.Civ.P. Rule 12(b)(6) motion, the Court must view the plaintiffs' complaint in the light most favorable to the plaintiffs and must accept as true all of the factual allegations in the complaint.[1] The motion will be denied if the allegations support relief on any possible theory.[2] The court will "bend over backwards. to avoid granting a 12(b) motion to dismiss." [3]

"The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a)." [4] All that is required is that the petition include "a short and plain statement of the claim that gives the defendants fair notice of what the plaintiffs' claim is and the grounds upon which it rests." [5]

There is no requirement that the plaintiff "set out in detail the facts upon which he bases his claim." [6] General factual allegations are sufficient and the court "will presume that general allegations embrace those specific facts that are necessary to support the claim." [7] However, conclusory allegations concerning the legal affect of the events alleged do not have to be accepted by the court.[8]

### Qualified Immunity

Allen Correctional Center (ACC) is a state corrections facility under the jurisdiction of the Louisiana Department of Public Safety and Corrections. It is operated by a private contractor, Wackenhut Corporation (Wackenhut), in accordance with the provisions of the Louisiana Corrections Private Management Act, LSA–R.S. 39:1800.1 *et seq.* Thus, the personnel operating the prison are employees of a private corporation rather than direct employees of the state. One issue before the court is whether the prison officials and correction officers at ACC are entitled to the qualified immunity afforded state prison officials. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). There is little authority on point and the authority that does exist is in conflict. *Manis v. Corrections Corporation of America,* 859 F.Supp. 302 (M.D.Tenn.

**1.** *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993).

**2.** *Cinel v. Connick,* 15 F.3d 1338 (5th Cir.1994).

**3.** *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 673 (5th Cir.1993).

**4.** Wright & Miller, Federal Practice and Procedure Civil 2d, § 1357 at n. 11; *Leatherman,* supra at ——, 113 S.Ct. at 1163.

**5.** *Leatherman,* supra at ——, 113 S.Ct. at 1163 (Quoting *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

**6.** *Leatherman,* supra at ——, 113 S.Ct. at 1163.

**7.** *National Organization for Women, Inc. v. Scheidler,* —— U.S. ——, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)).

**8.** 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, pp. 311–21.

1994) (no immunity); *Smith v. United States,* 850 F.Supp. 984 (M.D.Fla.1994) (immunity); *Tinnen v. Corrections Corporation of America,* 1993 WL 738121 (W.D.Tenn.1993) (immunity). This court concludes that the defense of qualified immunity is available to ACC personnel.

The Supreme Court recognized qualified immunity for government officials in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In doing so the Court relied on the common law for guidance.

> ... the common law soon recognized the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability. This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

416 U.S. at 239–40, 94 S.Ct. at 1688

In extending qualified immunity to school officials the Court stated:

> The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious school decision maker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and the students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure.

*Wood v. Strickland,* 420 U.S. 308, 318–22, 95 S.Ct. 992, 999–1000, 43 L.Ed.2d 214 (1975).

The rationale of these decisions was intended to guide the federal courts in resolving the tension between a plaintiff's right to compensation and the interests of the public as a whole "in the myriad factual situations in which it might arise." *Butz v. Economou,* 438 U.S. 478, 503, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). In *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) the court used this same rationale to grant qualified immunity to the superintendent of a state mental hospital. The Supreme Court again utilized this same rationale when it held that state prison officials were protected by qualified immunity in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

The Court has consistently utilized a functional approach in determining the proper scope of immunity. *Butz v. Economou,* supra at 513, 98 S.Ct. at 2914 (federal hearing examiner or administrative law judge is "functionally comparable" to a judge); *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983) ("... immunity analysis rests on functional categories not on the status of the defendant."); *Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985) ("... immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotes omitted)); *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) ("... immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches."). The determination of whether qualified immunity applies to the personnel at ACC must also turn on an analysis of function and not on their status as private parties versus state employees. *See Sherman v. Four County Counseling Center,* 987 F.2d 397 (7th Cir.1993) (qualified immunity extended to private medical institution involved in the emergency involuntary detention and treatment of a person); *Frazier v. Bailey,* 957 F.2d 920 (1st Cir.1992) (private parties who contracted with state to provide counselling services statutorily required of state were entitled to qualified immunity); *Rodriques v. Furtado,* 950 F.2d 805 (1st Cir. 1991) (qualified immunity available to private physician who conducted a body cavity search); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 844 F.2d 714, 722–23 (10th Cir.1988) (qualified immunity available to private party defendants acting in accordance with the duties imposed by a contract

with a governmental body to perform a governmental function).

The prison guards and correctional officers at ACC are required to perform the same functions and are faced with the same types of situations requiring the exercise of discretion as are state employees working in state prisons. The only difference is that those working at ACC do so pursuant to an employment contract with a state contractor whereas state employees do so pursuant to an employment contract with the state. The mere fact that their contractual ties to the state are different does not provide a logical basis for denying these workers the benefit of qualified immunity. They are the functional equivalent of state prison employees, and as such, the same rationales underlying the grant of qualified immunity to state prison officials have equal application to them.

It is the public interest, not the personal interest of the alleged violator, that justifies the granting of qualified immunity. Litigation costs money and diverts public servants' energy from their public responsibilities. The threat of liability serves as a deterrent factor to those considering public service. There is also the danger that fear of litigation will "dampen the ardor of all but the most resolute, or the most responsible public officials, in the unflinching discharge of their duties." (internal quotes and citation omitted). *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982).[9] Litigation and the threat of litigation against ACC officers and officials carries with it these same social costs. Wackenhut did not agree to run ACC for benevolent reasons. Any cost of litigation will ultimately be passed on to the State. Litigation will divert the ACC officials' energies from their duties just as effectively as it diverts state employees' energies. The threat of litigation is also a deterrent factor both to those who might seek employment at ACC and to Wackenhut when it considers whether it

wishes to contract with the state. Finally, this court sees no basis for believing that the threat of personal suits would have any less dampening effect on ACC employees in the discharge of their duties than it would have on state employees. ACC is a state prison, and the public has an interest in having those that operate it do so free of the threats of unnecessary litigation.

*Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) does not dictate a result different from that reached here. *See Sherman v. Four County Counseling Center, supra.* In *Wyatt* the Supreme Court stated:

> The question on which we granted certiorari is a very narrow one: "[W]hether private persons, who conspire with state officials to violate constitutional rights, have available the good faith immunity applicable to public officials." Pet. for Cert. i. The precise issue encompassed in this question, and the only issue decided by the lower courts, is whether qualified immunity, as enunciated in *Harlow*, supra, is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment or attachment statute. That answer is no.

504 U.S. at 165–70, 112 S.Ct. at 1832–34.

The holding in *Wyatt* was the result of the Court's conclusion that the rationales justifying qualified immunity were not transferable to private parties invoking state replevin, garnishment or attachment statutes. 504 U.S. at 168, 112 S.Ct. at 1833. Specifically, the Court stated:

> Unlike school board members, *see Wood, supra,* or police officers, *see Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), or Presidential aides, *see Butz, supra,* private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending Harlow qualified immuni-

---

**9.** "The administration of a prison is a difficult undertaking at best, for it concerns persons many of whom have demonstrated a proclivity for antisocial, criminal, and violent conduct. (citation omitted). We also acknowledge that many inmates do not refrain from harassment and intimidation. The number of non-meritorious pris-

oners' cases that come to this Court's notice is evidence of this. Tension between prison officials and inmates has been described as 'unremitting.' (citation omitted). 'Retaliation is much more than a theoretical possibility.'" 474 U.S. at 201–05, 106 S.Ct. at 501–02.

ty to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service. Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of immunity.

504 U.S. at 165–70, 112 S.Ct. at 1833–34.

In the case presently before this court private employees are engaged in performing the same functions and are required to make the same decisions for the benefit of the public as state employees working at prisons operated by the state. As already noted the rationales underlying qualified immunity are fully applicable to these "private" prison officers and officials. Denial of the protection of qualified immunity to ACC prison officers and officials would require the court to place form over substance. There is no suggestion in *Wyatt* that the Supreme Court intended to abandon its longstanding practice of functional analysis of immunity cases. Nor does it follow that the Court intended to establish a bright line rule that private parties can never be shielded by qualified immunity. In fact, just one year after *Wyatt* the Court implied that a court reporter and the firm that had engaged her pursuant to a contract to provide the District Court with court reporting services was entitled to qualified immunity. *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993).

In *Manis v. Corrections Corporation of America,* 859 F.Supp. 302 (M.D.Tenn.1994)

the court denied qualified immunity in a situation not materially different from that presented here. The court did so based on: (1) a lack of evidence that the common law ever extended qualified immunity to private citizens, and (2) its conclusion that public policy considerations weighed against a grant of immunity.[10] This court finds *Manis* unpersuasive for a number of reasons.

The significance of a lack of evidence that the common law ever extended qualified immunity to private citizens is questionable.[11] In fact, there is some evidence that the common law extended the protection of immunity to private citizens acting in accordance with an obligation to the public as a representative of a public official. *Dunn v. Mellon,* 147 Pa. 11, 23 A. 210 (Pa.1892). It is apparent that the common law determined questions regarding immunities based on a functional approach rather than blindly distinguishing between private parties and government employees. Accordingly, immunities were extended to witnesses, jurors, and arbitrators based on the function they served and the rationales underlying the grant of immunity. The justification for qualified immunity is that it provides a degree of protection from suits and liability to those performing official functions. Ordinarily those performing these official functions will be public officials, but this court has found no evidence that the common law would have denied this protection to the functional equivalent of a public official merely because he was an employee of a government contractor versus a direct employee of the government.

Further, *Manis* demonstrates an apparent slavish devotion to the common law not shared by the Supreme Court. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) the Court stated: "Al-

10. The court in *Manis* relied in large part on the decision of *Duncan v. Peck,* 844 F.2d 1261 (6th Cir.1988) which involved circumstances closely resembling those in Wyatt. Duncan was distinguished by *Rodriques v. Furtado, supra.*

11. The Supreme Court has often turned to a functional analysis where there was no common law directly on point even in the context of absolute immunity. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal hearing officer and administrative law judge

are functional equivalents to judges); *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983) (Police officer testifying performs same functions as any other witness); *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (No public defenders in 1871 so analogized to English barrister and private attorney); *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (prison discipline committee functionally more analogous to school board than to judges).

though it is true that we have observed that our determinations as to the scope of official immunity are made in the light of the 'common-law tradition,' (citation omitted), we have never suggested that the precise contours of official immunity can and should be slavishly derived from the often arcane rules of the common law." *Id.* at 644–45, 107 S.Ct. at 3041–42. *See Burns v. Reed,* 500 U.S. 478, 493–94, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991) (" 'the precise contours of official immunity' need not mirror the immunity at common law...."); *Wyatt v. Cole,* 504 U.S. 158, 170, 112 S.Ct. 1827, 1835, 118 L.Ed.2d 504 (1992) (J. Kennedy, concurring) ("In the context of qualified immunity for public officials, however, we have diverged to a substantial degree from the historical standards ..."). The Supreme Court first held that state prison officials were entitled to qualified immunity in *Procunier v. Navarette, supra.* In doing so the Court made no reference to the scope of immunity granted prison officials at common law. Rather, the Court relied upon the general principles regarding qualified immunity set out in *Scheuer v. Rhodes, supra,* and *Wood v. Strickland, supra.*[12] Clearly, blind devotion to the common law is neither necessary nor proper.

*Manis* also concluded that granting qualified immunity to prison officials employed by a government contractor was not appropriate due to public policy considerations. According, to the court in *Manis* this is, in part, because private parties are not interested in the good of the public at large. Rather, the court concluded that "corporate employees always are compelled to make decisions that will benefit their shareholders, without any direct consideration for the best interest of the public." The court in *Manis* suggests that there is an obvious temptation for a private corporation hired to operate a prison to "skimp on civil rights whenever it would help to maximize shareholders' profits" and that granting qualified immunity would free

a corporation to maximize its profits at the expense of civil rights.

The subjective motivations of prison workers no doubt vary and some workers are no doubt more altruistic than others. However, there does not seem to be any basis for concluding that prison workers employed by government contractors have any less interest than government employed prison workers in the good of the public or in civil rights. It seems more reasonable to conclude that because they perform the same functions and face the same problems on a day to day basis that their subjective attitudes about their jobs are more alike than different. Moreover, the rationale underlying qualified immunity does not assume that public officials are subjectively motivated by the desire to serve the public's interests. Rather it is based on the underlying assumption that the public interest will best be served if those performing public functions can do so without the threat of unnecessary litigation clouding their decisions and their actions.

Nor is it clear how profits and "skimping" on civil rights are related. *Manis* does not articulate how a corporation might reasonably expect to materially increase profits through civil rights violations. Even if it is assumed that expenses can be reduced by "skimping" on civil rights, government is no doubt also motivated to cut costs. *See* LSA-R.S. 39:1800.2. There is no substantial basis to conclude that cost consciousness would be more apt to result in the deprivation of prisoners' civil rights if a government contractor was involved as opposed to government employees.

Further, squeezing profits out of violations of constitutional rights would be a tricky path to navigate at best. Qualified immunity does not allow the clever or unusually well-informed violator of constitutional rights to evade liability. *Harlow,* 457 U.S. at 819–22, 102 S.Ct. at 2739–40 (J. Brennan, concurring). It affords protection only when an objectively reasonable officer could have be-

---

12. The lack of historical reference was noted by the dissent. "Perhaps with good reason, *see Whirl v. Kern,* 407 F.2d 781, 791–792 (5th Cir. 1969), the Court does not consult the common law to gauge the scope of a jailer's immunity. (citations omitted). Instead, the Court seems to

rely on an unarticulated notion that prison administrators deserve as much immunity as Governors, school administrators, hospital administrators, and policemen." 434 U.S. at 569 n. 3, 98 S.Ct. at 863 n. 3 (J. Stevens, dissenting).

lieved that what he did was lawful in light of clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity does not open a window of opportunity for the exploitation of constitutional rights. This court fails to see any significant danger that the grant of qualified immunity in this case will serve as a disincentive to compliance with the Constitution.

ACC is a state prison facility. The personnel there are the functional equivalents of their counterparts who are employees of the state. They are required to make the same decisions and exercise the same discretion exercised by state employed prison workers. Just as with state employees it is in the public interest that the ACC personnel not be distracted from their duties and that their exercise of discretion not be inhibited by threats of suits. Further, it is in the public interest that qualified contractors and employees not be discouraged from working at ACC due to threats of liability. The grant of qualified immunity strikes the proper balance between these public interests and the interest of compensating victims of constitutional deprivations.

### *Eleventh Amendment*

■ The Eleventh Amendment bars suits for damages against a state in federal court unless the state waives its immunity. *U.S.C.A. Const. Amend. 11.* Congress did not abrogate the states' Eleventh Amendment immunity by enacting § 1983.[13] Eleventh Amendment immunity extends to state agencies that act as arms of the state, but it does not extend to counties, cities, or other political subdivisions of the state. See *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Thus, the issue before this court is whether Wackenhut is an arm of the state entitled to Eleventh Amendment immunity, or whether, as the claimant alleges, Wackenhut is a private corporation which is subject to suit in federal court.

■ The State of Louisiana has waived sovereign immunity in tort contract suits but it has not waived its immunity under the Eleventh Amendment from suit in federal court. *U.S.C.A. Const. Amend. 11; LSA–R.S. 13:5106; LSA–Const. Art. 12, § 10.* A suit against any state correctional center would be a suit against the state and would thus be barred by the Eleventh Amendment.[14] The claimant however, asserts that Wackenhut is a private corporation and its employee, while operating in their official capacities, are therefore not shielded from liability by the Eleventh Amendment.

■ In determining whether a suit against an entity is in reality a suit against the state, several factors must be determined:

1) Whether the state statutes and case law characterize the agency as an arm of the state;

2) The source of funds for the entity;

3) The degree of local autonomy the entity enjoys;

4) Whether the entity is concerned primarily with local, as opposed to statewide problems;

5) Whether the entity has authority to sue and be sued in its own name; and

6) Whether the entity has the right to hold and use property.

*Tradigrain v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir.1983); *Delahoussaye v. City of New Iberia,* 937 F.2d 144 (5th Cir.1991).

■ As stated previously, in the court's discussion on Qualified Immunity, Allen Correctional Center is a state correctional facility under the jurisdiction of the Louisiana Department of Public Safety and Corrections. Wackenhut is a private contractor which operates the facility in accordance with the provisions of the Louisiana Corrections Private Management Act, *LSA–R.S. 39:1800.1 et seq.* Wackenhut is supervised at all times by the Department of Corrections. *LSA R.S. 39:1800.4.* Wackenhut manages

---

**13.** See, e.g., *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

**14.** *Anderson v. Phelps,* 655 F.Supp. 560 (M.D.La. 1985); *Building Engineering Services Co., Inc. v. State of La.,* 459 F.Supp. 180 (E.D.La.1978).

facilities throughout the state and the legislature has indicated that these private contracts for corrections are for the "safety and welfare of the people of the state" as opposed to a local interest. *LSA R.S. 39:1800.* Therefore, this court holds that Wackenhut operates Allen Correctional Center as an arm of the state and is immune from suit. Thus, suits against Wackenhut employees, in their official capacities, are barred by the Eleventh Amendment.

### Failure to Allege Constitutional Violations

 The defendants assert that they are not liable for damages as official capacity suits are barred by the Eleventh Amendment to the United States Constitution. Damages would however, be available against an individual state official who is sued and held liable in his individual capacity.[15] In such a suit, the official is entitled to the limited, "qualified immunity"[16] discussed hereinabove. This immunity is only defeated if the official took the complained of action "with the malicious intention to cause a deprivation of rights," or the official violated clearly established statutory or constitutional rights "of which a reasonable person would have known."[17]

The plaintiffs allege that on March 29, 1994, at approximately 1:45 a.m., they were both taken to the cell block where defendant Whittington began to hit Chapman in the face and kick him in the groin area. Then Whittington, Steneson, and Jacobs allegedly began to hit Citrano. After being taken to his cell, Citrano alleges that Sgt. Whittington came and hit him more. Both inmates contend that they were injured in these beatings. The plaintiffs further allege that they were denied medical assistance and that the defendants knowingly prevented treatment as well as attempted to "cover-up" the incident."

### Delay/Denial of Medical Treatment

 It is well settled that an inmate's complaint of inadequate medical care amounts to a constitutional violation if the inmate "alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[18] In determining deliberate indifference, the court must scrutinize the particular facts of the case and look for substantial indifference, indicating more than mere negligence or isolated occurrences of neglect.[19] Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay or intentionally interfere with medical treatment."[20]

 It is only "deliberate indifference", "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment.[21] In *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals reiterated the deliberate indifference standard as set forth in *Estelle.* The court stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical attention was as good as it should have been is not a cognizable complaint under the Civil Rights Act.[22] Delay in medical care to a prisoner can constitute a violation of the Eighth Amendment only if there is a deliberate indifference

---

15. *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209, 227 (1986).

16. *Procunier v. Navarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24, 30 (1978).

17. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 409, 410. See also, *Procunier,* 434 U.S. at 565, 98 S.Ct. at 861, 55 L.Ed.2d at 33.

18. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

19. *Toussaint v. McCarthy,* 801 F.2d 1080, 1111 (9th Cir.1986), cert. den. 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

20. *Hutchinson v. U.S.,* 838 F.2d 390, 394 (9th Cir.1988).

21. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291; *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

22. See *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992).

which results in substantial harm.[23] While poor medical treatment can rise to the level of a constitutional violation, mere malpractice, or even gross negligence, does not suffice. Citrano's medical care was not as prompt or efficient as a free citizen might hope to receive, but he was given medical care at the prison four days after the alleged incident. Chapman received no medical treatment. The complaint is unclear, however, as to how Citrano's delay and Chapman's failure to receive medical treatment involves deliberate indifference or substantial harm.

### Excessive Force

For a prisoner to state a claim for use of excessive force under the Eighth Amendment, the prisoner must show that the force was not applied in a good faith effort to maintain or restore discipline, but rather was administered in a malicious or sadistic manner to cause harm; further, the prisoner must show some injury, but the injury need not be "significant". *Rankin v. Klevenhagen,* 5 F.3d 103 (5th Cir.1993).

A section 1983 claimant must allege specific facts supporting a cognizable constitutional violation to prevent dismissal for failure to state a claim. *Brinkmann v. Johnston,* 793 F.2d 111 (5th Cir.1986). The plaintiffs in this case have alleged specific facts that would support a cause of action for callous indifference to the plaintiffs' rights attributable to Sgt. Whittington, Sgt. Stenson, Sgt. Jacobs, Deputy Warden Andrews and Capt. Bellon. There are no allegations, however, which would support a § 1983 cause of action against any defendant, except Andrews, by reason of supervisory defalcation or which would support an allegation of individual liability against Sgt. Jowels, Sgt. Austin, Warden Terry Terrell, or Deputy Warden Crutcher.

Plaintiffs will be allowed twenty (20) days to correct those deficiencies by amendment to include specific factual allegations that would support a cause of action against Jowels, Austin, Terrell, and Crutcher.

The Allen Parish Correctional Center is an improper party and should be dismissed. Likewise, all of the prison personnel, in their official capacities, are immune from suit because this action against them is tantamount to an action against the State of Louisiana, which is prohibited by the Eleventh Amendment.[24]

For the reasons stated above, the motion will be granted with respect to claims against Allen Parish Correctional Center, Sgt. Whittington, Sgt. Stenson, Sgt. Jacobs, Capt. Bellon, Sgt. Jowels, Warden Terry Terrell, Sgt. Autin, Deputy Warden Andrews and Deputy Warden Crutcher, in their official capacities and they will be dismissed with prejudice. The plaintiff shall have twenty (20) days from the date hereof to amend this complaint in accordance with the above to state causes of action against the defendants in their individual capacities, in default of which, these claims will also be dismissed.

---

**23.** *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993).

**24.** *Jacintoport Corp. v. Greater Baton Rouge Port Commission,* 762 F.2d 435 (5th Cir.1985), cert. den. 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986); *Anderson v. Phelps,* 655 F.Supp. 560 (M.D.La.1985); *Building Engineering Services Co., Inc. v. State of Louisiana,* 459 F.Supp. 180 (E.D.La.1978).